IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MARGARET BAUMGARNER,                          3:12-CV-01174-BR

        Plaintiff,                          OPINION AND ORDER

v.

COMMUNITY SERVICES, INC.,

        Defendant.

**DANIEL J. SNYDER**
**CARL LEE POST**
**CYNTHIA J. GADDIS**
Law Offices of Daniel Snyder
1000 S.W. Broadway
Suite 2400
Portland, OR 97205
(503) 241-3617

       Attorneys for Plaintiff

**LYNDA J. HARTZELL**
**COLIN M. LOVE-GEIGER**
Tonkon Torp LLP
1600 Pioneer Tower
888 S.W. Fifth Avenue
Suite 1600
Portland, OR 97204-2099
(503) 802-2153

       Attorneys for Defendants

1 - OPINION AND ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant's Motion (#106) for Summary Judgment.  For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion.


<u>BACKGROUND</u>

On July 3, 2006, Plaintiff Margaret Baumgarner began working for Defendant Community Services, Inc., as a Lifestyle Support Specialist in Defendant's administrative office.

Defendant is a domestic nonprofit corporation "organized exclusively for charitable purposes within the meaning of section 501(c)(3) of the Internal Revenue Code."  Decl. of Lynn Boose, Ex. 1 at 2.  *See also* Boose Decl. Ex. 2; Decl. of Colin Love-Geiger, Ex. 3 at 22.  Defendant was "established to provide community housing, training, and supportive services for developmentally disabled . . . adults in the Portland, Oregon metropolitan area."  Love-Geiger Decl., Ex. 4 at 9.  Specifically, Defendant "provide[s] residential care to people with mental disabilities" and "serve[s] people who are intellectually disabled and developmentally disabled" in 23 licensed facilities and a vocational program.  Love-Geiger Decl., Ex. 3 at 7 and Ex. 2 at 3.

On May 11, 2007, Plaintiff's job title was changed to Customer Services/Recruitment Specialist.

On January 25, 2010, Plaintiff changed to the position of Human Resources Assistant.

On March 26, 2010, Plaintiff met with Defendant's Chief Financial Officer, Cheryl Walker-Robinson, and Plaintiff's Office Manager, Carol Graham, and advised them that she was pregnant. Plaintiff also provided them with a medical note dated March 26, 2010, from Jeffery Penikas, M.D., in which he restricted Plaintiff to working four hours per day for the following two weeks.

On April 9, 2010, Plaintiff called Graham and advised her that Dr. Penikas had taken Plaintiff off work until April 26, 2010, due to early pregnancy complications.  Plaintiff faxed Graham a work release from Dr. Penikas.

On April 12, 2010, Plaintiff received a letter from Defendant dated April 9, 2010, in which Defendant advised Plaintiff:  "As of 4/09/2010, we are tentatively designating your time off of 4/9/10 - 4/26/10 as OFLA/FMLA.  Thereafter any additional time off that you may take related to this condition will be considered OFLA/FMLA[.]"[1]  Second Am. Compl., Ex 1 at 1.

Plaintiff used OFLA or FMLA leave from April 9 through April 26, 2010.

On April 23, 2010, Dr. Penikas released Plaintiff to work up

---

[1] OFLA refers to the Oregon Family Leave Act, Oregon Revised Statute § 659A.150.  FMLA refers to the Family Medical Leave Act, 29 U.S.C. § 2601.

3 - OPINION AND ORDER

to 20 hours per week.

On May 20, 2010, Dr. Penikas took Plaintiff off work until further notice.  Plaintiff provided Graham with a release from Dr. Penikas and filled out an Employee Leave Request for medical leave.  Plaintiff did not work from May 20, 2010, through June 18, 2010.

On June 3, 2010, Plaintiff received a letter from Defendant dated May 21, 2010, advising Plaintiff that she had ten weeks of OFLA/FMLA leave remaining.

On Friday June 18, 2010, Dr. Penikas released Plaintiff to work 20 hours per week.  Plaintiff called Graham and informed her that Dr. Penikas had released Plaintiff to work.

On June 21, 2010, Plaintiff began working approximately 20 hours per week.

On July 19, 2010, Plaintiff received a letter from Walker-Robinson dated July 16, 2010, in which Walker-Robinson notified Plaintiff that her part-time schedule was considered a reduction in her "scheduled shift" and "the remaining hours of your normal 8hr assigned shift must be applied to OFLA/FMLA."  Second Am. Compl., Ex. 6 at 1.  Walker-Robinson also advised Plaintiff "[a]fter returning to work on or before the end of your 12weeks [*sic*] OFLA/FMLA leave for pregnancy disability, you are entitled to be reinstated to the same or equivalent position."  *Id*. Walker-Robinson also stated Plaintiff had six weeks of OFLA/FMLA

time remaining as of June 18, 2010.

On July 19, 2010, Dr. Penikas released Plaintiff to work six hours per day beginning July 20, 2010.

On July 23, 2010, Plaintiff received a letter from Walker-Robinson in which she advised Plaintiff that "[p]rior to [July 22, 2010,] you had approximately (4) wks remaining of your unpaid leave.  We will continue to apply any un-worked hours of your normal 8hr assigned shift towards your 12wks OFLA/FMLA." Second Am. Compl., Ex. 7 at 1.

On August 27, 2010, Dr. Penikas restricted Plaintiff to working four hours per day "until she delivers."  Jt. Statement of Agreed Facts at ¶ 19.  Dr. Penikas advised Defendant that Plaintiff's due date was October 7, 2010.  Plaintiff delivered the restriction letter to Graham and filled out an Employee Leave Request for medical leave.

On August 30, 2010, Plaintiff went to work at 8:49 a.m., but began having contractions and went to the hospital at approximately 9:30 a.m.  Plaintiff's mother advised Graham later on August 30, 2010, that Plaintiff was in the hospital and would not be at work the next day.  "The ER took Plaintiff off work until September 6, 2010."  Jt. Statement of Agreed Facts at ¶ 20.

On September 2, 2010, Dr. Penikas took Plaintiff off work beginning September 2, 2010, until six weeks after Plaintiff delivered her babies if they were delivered by vaginal delivery

5 - OPINION AND ORDER

or until eight weeks after delivery by cesarean section.
Plaintiff telephoned Graham and advised her of Dr. Penikas's work
restriction.  Graham informed Plaintiff that she could bring in a
note from Dr. Penikas "when Plaintiff was able."  Jt. Statement
of Agreed Facts at ¶ 22.

On September 3, 2010, Plaintiff telephoned Graham and told
her that Plaintiff was bringing in Dr. Penikas's note that day.
Graham told Plaintiff that she would not be at work and Plaintiff
should take the note "to the office."  Jt. Statement of Agreed
Facts at ¶ 23.  Plaintiff took Dr. Penikas's note to the office
but Plaintiff did not get out of the car due to her contractions.
Derric Thompson took Dr. Penikas's note to Gale Higley, an office
assistant, and Higley left the note with staff in Walker-
Robinson's office.

Plaintiff alleges in her Second Amended Complaint that she
received a voicemail from Graham on September 12, 2010, advising
her that Walker-Robinson was going to send Plaintiff a letter
terminating her employment because Plaintiff had exhausted her
FMLA/OFLA leave.

On September 15, 2010, Plaintiff received a letter from
Walker-Robinson dated September 9, 2010, stating in pertinent
part:

> According to the most recent medical statement
> Sept 2, 2010, from your attending physician, you
> are still unable to return to work.  Your 12 weeks
> of OFLA/FMLA leave has expired.  Therefore

6 - OPINION AND ORDER

> [Defendant] is no longer required to hold your
> position open for you.  We have terminated your
> employment with [Defendant] effective August 31,
> 2010.

Second Am. Compl., Ex. 8 at 1.

On September 17, 2010, Plaintiff gave birth to twins.

On July 2, 2012, Plaintiff filed a Complaint in this Court asserting claims for (1) violation of FMLA, (2) violation of OFLA, (3) sex discrimination in violation of Oregon Revised Statute § 659A.030, (4) religious discrimination in violation of Oregon Revised Statute § 659A.030, and (5) wrongful termination.

On July 20, 2012, before Defendant filed an Answer, Plaintiff filed a First Amended Complaint asserting claims for (1) violation of FMLA; (2) violation of OFLA; (3) sex discrimination in violation of Oregon Revised Statute § 659A.030; (4) religious discrimination in violation of Oregon Revised Statute § 659A.030; (5) wrongful termination; (6) sex discrimination in violation of Title VII, 42 U.S.C. § 2000e-2; and (7) religious discrimination in violation of Title VII, 42 U.S.C. § 2000e-2.

On January 22, 2013, Plaintiff filed a Second Amended Complaint asserting claims for (1) violation of FMLA, (2) violation of OFLA, (3) sex discrimination in violation of Oregon Revised Statute § 659A.030, (4) religious discrimination in violation of Oregon Revised Statute § 659A.030, (5) wrongful termination, (6) sex discrimination in violation of Title VII,

7 - OPINION AND ORDER

(7) religious discrimination in violation of Title VII, and
(8) discrimination based on martial status in violation of Oregon
Revised Statute § 659A.303.

On September 5, 2013, Defendant filed a Motion for Summary
Judgment.


## STANDARDS

Summary judgment is appropriate when "there is no genuine
dispute as to any material fact and the movant is entitled to
judgment as a matter of law." *Washington Mut. Ins. v. United
States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R.
Civ. P. 56(a).  The moving party must show the absence of a
dispute as to a material fact. *Rivera v. Philip Morris, Inc.*,
395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly
supported motion for summary judgment, the nonmoving party must
go beyond the pleadings and show there is a genuine dispute as to
a material fact for trial. *Id*.  "This burden is not a light one.
. . .  The non-moving party must do more than show there is some
'metaphysical doubt' as to the material facts at issue." *In re
Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)
(citation omitted).

A dispute as to a material fact is genuine "if the evidence
is such that a reasonable jury could return a verdict for the
nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d

1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted).  A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.*, No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011) (citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

    The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

## DISCUSSION

    Defendant moves for summary judgment on the ground that

Plaintiff failed to comply with the notice provision of the
Oregon Tort Claims Act (OTCA), Oregon Revised Statute
§ 30.275(1), and, therefore, all of Plaintiff's claims against
Defendant are barred as a matter of law.

According to Plaintiff, however, the OTCA does not apply to
any of Plaintiff's claims because Plaintiff did not work in a
facility covered by the OTCA, Defendant waived the notice
requirement of the OTCA, and Defendant's payment of Plaintiff's
wages due upon termination satisfied the OTCA notice requirement.
Plaintiff also asserts the OTCA does not apply to her federal
claims.

## I.   Plaintiff worked in a facility covered by the OTCA.

The OTCA provides in pertinent part:  "No action arising
from any act or omission of a public body or an officer, employee
or agent of a public body . . . shall be maintained unless notice
of claim is given as required by this section."  Or. Rev. Stat.
§ 30.275(1).  "Under ORS 30.275(1), no action arising from a
public body's tort can be maintained without timely tort claim
notice."  *Barns v. City of Eugene*, 183 Or. App. 471, 474 (2002).
The OTCA further requires a plaintiff to provide notice of her
claim within "180 days after the alleged loss or injury."  Or.
Rev. Stat. § 30.275(2)(b).  Plaintiff concedes she did not
provide formal notice of her claims within 180 days after her
termination.

10 - OPINION AND ORDER

Under the OTCA a "public body" includes:

> A . . . nonprofit facility as defined in ORS
> 427.005, organized and existing under ORS chapter
> 65, that receives more than 50 percent of its
> funding from the state or a political subdivision
> of the state for the purpose of providing
> residential or vocational services to individuals
> with intellectual or other developmental
> disabilities.

Or. Rev. Stat. § 30.262(1)(a).  In addition, § 30.262 applies

only to a nonprofit facility "that provides services to

individuals with intellectual or other developmental disabilities

under a contract with:  (a) The Department of Human Services; or

(b) A community mental health program or community developmental

disabilities program established pursuant to ORS 430.620."  Or.

Rev. Stat. § 30.262(2)(a) and (b).

In turn, Oregon Revised Statute § 427.005(6) defines a

facility as "a group home . . . or other facility or *program* that

the Department of Human Services approves to provide necessary

services to persons with intellectual disabilities or other

developmental disabilities."  Emphasis added.

Plaintiff does not dispute Defendant was organized and

"exist[s] under" Chapter 65 of the Oregon Revised Statutes and

receives more than 50 percent of its funding from the State of

Oregon and/or its political subdivisions.  Plaintiff also does

not dispute certain individual buildings within Defendant's

organization house facilities that provide residential or

vocational services to individuals with intellectual or other

11 - OPINION AND ORDER

developmental disabilities.  Plaintiff, however, notes she worked in a building that housed only administrative functions rather than in one of the buildings that contains facilities to provide residential or vocational services to individuals with intellectual or other developmental disabilities.  According to Plaintiff, therefore, she did not work at a nonprofit facility as defined in § 427.005 and, thus, was not required to give notice under the OTCA.

Defendant points out that § 427.005(6) defines a facility for purposes of the OTCA to include programs that the Department of Human Services approves for providing services to persons with intellectual disabilities or other developmental disabilities. Lynn Boose, Defendant's Chief Executive Officer, testified at deposition that the administrative office at which Plaintiff was employed supports the provision of services to people with intellectual disabilities or other developmental disabilities by Defendant.  Specifically, Boose testified Defendant's administrative office manages the funds received from the State on behalf of the clients, ensures Defendant's compliance with the Oregon Administrative Rules, manages fleet transportation for clients, administers Defendant's personnel, conducts quality assurance oversight, and manages the budget for each group home. Love-Geiger Decl., Ex. 3 at 11-13.  Summarizing her testimony, Booze stated Defendant's administrative office is part of an

12 - OPINION AND ORDER

"integrated program" by Defendant to provide its services to individuals with intellectual and developmental disabilities. In addition, the record reflects the certificates issued by the Department of Human Services "signif[y] that Community Services, Inc. is in substantial compliance with OAR 411-345-0010 through 411-345-0280 . . . and is hereby granted approval to provide Employment and Alternative to Employment Services" and "24 Hour Residential Services" in various counties in Oregon. Love-Geiger Decl., Ex. 8 at 45-47; Ex. 9 at 1.

On this record the Court concludes Defendant as a whole, including the administrative office at which Plaintiff worked, constitutes a program within the meaning of § 427.005(6) because individual analysis of a program by its buildings does not appear to have been contemplated under the statute and would be contrary to the use of the term "program" in §427.005(6). Accordingly, the Court concludes as a matter of law that Defendant is a public body under § 30.262(1)(a), and Plaintiff, therefore, was required to give Defendant tort notice as required under the OTCA.

**II.  Defendant did not waive the OTCA notice requirement.**

Plaintiff contends Defendant waived the OTCA notice requirement when it did not assert the lack of OTCA notice as an Affirmative Defense until it filed its Amended Answer to Plaintiff's Second Amended Complaint.

13 - OPINION AND ORDER

**A.    Procedural background**

On July 20, 2012, before Defendant filed an Answer to Plaintiff's Complaint, Plaintiff filed a First Amended Complaint.

On August 6, 2012, Defendant filed an Answer in which it asserted Affirmative Defenses of failure to state a claim, failure to mitigate, unclean hands, nondiscriminatory reason for termination, and waiver.

On January 22, 2013, Plaintiff filed a Second Amended Complaint to add a claim for discrimination based on marital status in violation of Oregon Revised Statute § 659A.030.

On February 8, 2013, Defendant filed an Answer to Plaintiff's Second Amended Complaint asserting Affirmative Defenses of failure to state a claim, failure to mitigate, unclean hands, nondiscriminatory reason for termination, waiver, and estoppel.

On February 25, 2013, Defendant filed an Amended Answer to Plaintiff's Second Amended Complaint in which it asserted Affirmative Defenses of failure to state a claim, failure to mitigate, unclean hands, nondiscriminatory reason for termination, waiver, estoppel, and, for the first time, failure to exhaust, preemption, good faith, statute of limitations, "same actor," and that Plaintiff's claims are barred in whole or in part by Oregon Revised Statute § 30.275.

On March 12, 2013, Plaintiff filed a Motion to Strike

14 - OPINION AND ORDER

Answer to Complaint pursuant to Federal Rule of Civil Procedure 12(f) in which Plaintiff moved to strike Defendant's Amended Answer to Plaintiff's Second Amended Complaint on the ground that it was untimely filed.  Specifically, Plaintiff asserted Defendant was required to raise any and all affirmative defenses in its Answer to Plaintiff's First Amended Complaint under Federal Rule of Civil Procedure 8(c)(1) and/or Defendant was required to add any additional defenses by January 22, 2013, which was the deadline the Court set to file any amended pleadings.

On April 17, 2013, the Court issued an Opinion and Order denying Plaintiff's Motion to Strike on the ground that Defendant's Amended Answer was not untimely.  The Court also rejected Plaintiff's assertion that Defendant was required to raise all of its affirmative defenses in its Answer to Plaintiff's First Amendment Complaint and noted the Ninth Circuit has "liberalized the requirement that defendants must raise affirmative defenses in their initial pleadings." *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001)(quotation omitted).  The Ninth Circuit held in *Owens* that a defendant may raise an affirmative defense at a later time as long as the delay does not prejudice the plaintiff.  *Id*.  *See also Magana v. Commonwealth of the N. Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997)("[D]efendants may raise an affirmative

15 - OPINION AND ORDER

defense for the first time in a motion for summary judgment only if the delay does not prejudice the plaintiff."). In addition, mere untimely assertion of an affirmative defense is insufficient to establish prejudice. *Owens*, 244 F.3d at 713. The Court noted Plaintiff did not allege any prejudice resulted from Defendant asserting additional affirmative defenses and that discovery remained open in the matter at that time.

**B.    Waiver**

"Waiver is the intentional relinquishment of a known right." *Genesis Indem. Ins. Co. v. Deschutes Cnty*, 194 Or. App. 446, 453 (2004)(citing *Bennett v. Farmers Ins. Co.*, 332 Or. 138, 156 (2001), and *Crain v. Siegel*, 151 Or. App. 567, 573 (1997)).

> [I]n the absence of an express agreement a waiver will not be presumed or implied contrary to the intention of the party whose rights would be injuriously affected thereby, unless by his conduct the opposite party has been misled, to his prejudice, into the honest belief that such waiver was intended or consented to. To make out a case of waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part.

*Brown v. Portland Sch. Dist. No. 1*, 291 Or. 77, 84 (1981) (quotation omitted).

In her Response to Defendant's Motion for Summary Judgment, Plaintiff reiterates the arguments she asserted in her Motion to Strike Defendant's Affirmative Defense of Waiver. Plaintiff does not point to any express waiver by agreement and,

16 – OPINION AND ORDER

as the Court noted in its April 17, 2013, Opinion and Order, mere untimely assertion of an affirmative defense is insufficient to establish prejudice.  *See Owens*, 244 F.3d at 713.  In the absence of any factual basis showing Defendant voluntarily relinquished its right to rely on the Tort-Claim Notice requirements of the OTCA, the Court declines to conclude that Defendant waived its Affirmative Defense of Plaintiff's failure to provide Defendant with OTCA notice.

**III. Defendant's payment of Plaintiff's wages due on termination did not satisfy the OTCA notice requirement.**

As noted on August 30, 2010, Plaintiff went to work at 8:49 a.m. but left at approximately 9:30 a.m. to go to the hospital.  August 30, 2010, was Plaintiff's last day at work.

On September 15, 2010, Plaintiff received her final paycheck from Defendant, but it did not include any wages for the 40 minutes that Plaintiff worked on August 30, 2010.

When Plaintiff filed her Complaint in this matter on July 2, 2012, and her First Amended Complaint on July 20, 2012, Plaintiff did not include any claims for violation of federal or state wage-and-hour laws or any factual allegations related to Plaintiff's final paycheck or wages for August 30, 2010.  It appears the first time that Plaintiff formally raised her unpaid wage issue was on December 5, 2012, when Plaintiff made a demand on Defendant by letter stating:

Plaintiff worked for defendant for approximately

17 - OPINION AND ORDER

> 0.75 hours on August 30, 2010.  Plaintiff has not
> been paid for that time.  On behalf of Plaintiff,
> I am demanding payment from defendant of
> plaintiff's wages for the time she clocked in on
> August 30, 2010 until she left work that morning.
> Please send payment within the next 7 days.

Decl. of Carl Post, Ex. 1 at 3.

In response, on December 11, 2012, Defendant issued

Plaintiff a check in the amount of $9.90 and noted it "disputes

. . . [Plaintiff] is entitled to the enclosed wages, but has paid

the demand in order to avoid a wage claim by your office."  Love-

Geiger Decl., Ex. 2 at 1.

Thereafter on January 22, 2013, Plaintiff filed a Second

Amended Complaint, which also did not include any claims for

violation of federal or state wage-and-hour laws or any factual

allegations related to Plaintiff's final paycheck or wages for

August 30, 2010.

Nevertheless, Plaintiff contends Defendant's payment of

$9.90 dispensed with the OTCA notice requirement pursuant to

Oregon Revised Statute § 30.275(3)(d), which provides the notice

requirement of the OTCA "is satisfied by . . . [p]ayment of all

or any part of the claim by or on behalf of the public body at

any time."  Plaintiff also contends she has consistently sought

economic damages including "lost income," and, therefore, she has

asserted a claim against Defendant for the wages due to Plaintiff

for her work on August 30, 2010.  Plaintiff relies on *Hughes v.

City of Portland*, 255 Or. App. 271 (2013), to support her

18 - OPINION AND ORDER

argument.

In *Hughes* the plaintiff was a passenger in a vehicle driven by Michael Bruce, which was involved in a four-vehicle accident that occurred on November 20, 2008, and was allegedly caused by a city employee.  Bruce was insured by State Farm Insurance Company.  255 Or. App. at 273.  After the accident, State Farm sent the defendant City of Portland's Risk Management Division (RMD) a letter advising the defendant that it was "handling this claim on behalf of [Bruce]," identifying the plaintiff as an injured party, and stating "it served as notice to defendant of State Farm's 'subrogation or reimbursement rights under Personal Injury Protection' and requested reimbursement for any payments that it made under the PIP claim."  *Id.* at 274.  On January 28, 2010, State Farm sent the defendant a letter seeking to recover $636.11.  Handwritten notes on the copy of the letter in the defendant's risk-management file indicated $532.11 was related to the plaintiff's claim and the remaining $104.00 was related to Bruce's claim.  *Id.*  On February 5 or 6, 2010, the defendant issued a check to State Farm for $636.11.

Ultimately the plaintiff brought a personal-injury negligence action against the City of Portland arising out of the accident, and the defendant moved for summary judgment on the ground that the plaintiff failed to provide tort-claim notice under the OTCA.  The trial court granted summary judgment to the

defendant.  On appeal the plaintiff argued the defendant's
payment of the plaintiff's PIP claim to State Farm was also a
partial payment of the plaintiff's personal-injury claim.  *Id*. at
277.  The Oregon Court of Appeals reversed the trial court and
held the defendant's payment of the plaintiff's PIP claim could
also constitute partial payment of the plaintiff's claim for his
personal injuries.  *Id*. at 278.  The court explained:

> A public body's reimbursement of PIP benefits
> under ORS 742.534 demonstrates that the public
> body is aware that an accident has occurred, that
> a particular person has suffered bodily injury as
> a result, and that the public body is alleged
> . . . to be responsible for the accident.  If the
> reimbursement is given voluntarily, it also
> constitutes an acknowledgement [*sic*] by the public
> body of its probable liability for the accident.

*Id*. at 280.  The court noted "[t]he policy behind the 180 day
notice requirement is to afford the public body timely notice of
*the alleged tort* to allow its officers an opportunity to
investigate all matters promptly and ascertain the facts before
they become stale."  *Id.* at 281 (emphasis added).

     Defendant notes the Oregon Court of Appeals in *Hughes*
specifically pointed out that "under [§30.275](3)(d), payment of
all or any part of 'the claim' refers to payment of all or part
of the specific claim or claims that the plaintiff *ultimately*
*asserts* against the public body."  *Id*. at 277 (emphasis added).

     As Defendant emphasizes, Plaintiff here has never asserted a
wage claim of any kind against Defendant.  Moreover, Defendant

20 - OPINION AND ORDER

points out that an alleged failure to pay wages due on
termination is distinct and wholly separate from the torts that
Plaintiff alleged in her various Complaints, which all arise from
allegedly discriminatory conduct.  Thus, unlike in *Hughes*, any
notice of the alleged failure to pay wages due on termination did
not also serve to provide notice to which Defendant was entitled
under the OTCA as to the alleged discriminatory conduct.

Finally, Defendant points out that even though Plaintiff has
consistently sought economic damages for lost past and future
wages in her Complaints, Plaintiff is not entitled under any of
her claims to recover any wages allegedly lost during the time
she was still employed by Defendant.  Specifically, Oregon courts
have made clear that economic damages in the form of lost wages
for claims brought under Title VII, FMLA, OFLA, and § 659A.030
are limited to the period after the adverse employment action (in
this case, after Plaintiff's termination).  *See, e.g., Caudle v.
Bristow Optical Co., Inc.*, 224 F.3d 1014, 1023 (9th Cir. 2000)
(The court measured the back-pay period for the plaintiff's
wrongful-discharge claim and held the "back pay award represented
[the plaintiff]'s lost earnings during the period from her
discharge" forward); *Tadsen v. Praegitzer Indus., Inc.*, 136 Or.
App. 247, 253 (1995)("We conclude that the same ultimate question
– the period that the plaintiff would likely have been employed
by the defendant but for the discrimination – is the proper one

21 - OPINION AND ORDER

in connection with front pay claims as well as claims for back pay."); *Gotthardt v. Nat'l R.R. Passenger Corp.*, 191 F.3d 1148, 1158 (9th Cir. 1999)(When calculating back pay, "damages are determined by measuring the difference between actual earnings for the period and those which [the plaintiff] would have earned absent the discrimination by defendant.").

The Court agrees with Defendant's analysis and, pursuant to *Hughes*, *Caudle, Tadsen,* and *Gotthardt,* concludes Defendant's payment of $9.90 for unpaid wages does not constitute notice under § 30.275(3)(d) and, therefore, Defendant's payment of those wages did not satisfy the OTCA notice requirement for the claims that Plaintiff asserts in this action.

In summary, the Court concludes Plaintiff was required to comply with the notice provision of the OTCA to preserve her state-law claims.  Because Plaintiff did not provide the required timely notice of those claims pursuant to the OTCA, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's state-law claims.

## IV.  The OTCA notice requirement does not apply to Plaintiff's federal claims.

Defendant also asserts the OTCA applies to Plaintiff's federal claims, and, therefore, Plaintiff's failure to provide timely notice is also fatal to her claims for Defendant's alleged violations of FMLA and Title VII.  Defendant notes the OTCA defines a tort for the purposes of that Act as

22 - OPINION AND ORDER

> the breach of a legal duty that is imposed by law,
> other than a duty arising from contract or
> quasi-contract, the breach of which results in
> injury to a specific person or persons for which
> the law provides a civil right of action for
> damages or for a protective remedy.

Or. Rev. Stat. § 30.260(8).  Defendant contends because the OTCA does not specifically preclude application to federal torts and because a number of courts in Oregon have held claims under Title VII and FMLA to be torts, the OTCA notice requirement applies to Plaintiff's federal claims as well.  Defendant relies on *Loiseau v. Department of Human Resources of State of Oregon*, 558 F. Supp. 521 (D. Or. 1983); *Urban Renewal Agency of City of Coos Bay v. Lackey*, 275 Or. 35 (1976); and *Butterfield v. State*, 163 Or. App. 227 (1999), to support its assertion that federal claims may be subject to the OTCA.

In *Loiseau* the plaintiff brought an action against the Oregon Department of Human Resources alleging, among other things, that the defendant violated 42 U.S.C. §§ 1981 and 1983. The defendant moved for summary judgment as to the plaintiff's claims under §§ 1981 and 1983 on the ground that the plaintiff failed to bring his action within the two-year limitations period set out in the OTCA.  The court granted the defendant's motion. The court concluded in light of the fact that §§ 1981 and 1983 do not contain a limitations period, the OTCA statute of limitations was the most appropriate period to apply.  558 F. Supp at 526-27.

Defendant contends the court's application of the OTCA

23 - OPINION AND ORDER

limitations period to a § 1983 claim in *Loiseau* suggests other
provisions of the OTCA, such as the notice provision, also apply
to other federal statutes such as Title VII.  The Oregon Supreme
Court, however, held in *Rogers v. Saylor*, 306 Or. 267 (1988),
that the State of Oregon could not apply all of the provisions of
the OTCA to a plaintiff's § 1983 claim because "a state cannot
limit the amount a plaintiff can recover in a section 1983
action, *just as it cannot require that the plaintiff first submit
his claims to the government.*"  *Id*. at 278 (emphasis added).  In
reaching its conclusion, the court in *Rogers* relied on a United
States Supreme Court case in which the Court addressed the
applicability of a Wisconsin state statute to a claim under
§ 1983.  The Wisconsin statute provided:

> [B]efore suit may be brought in state court
> against a state or local governmental entity or
> officer, the plaintiff must notify the
> governmental defendant of the circumstances giving
> rise to the claim, the amount of the claim, and
> his or her intent to hold the named defendant
> liable.  The statute further requires that, in
> order to afford the defendant an opportunity to
> consider the requested relief, the claimant must
> refrain from filing suit for 120 days after
> providing such notice.  Failure to comply with
> these requirements constitutes grounds for
> dismissal of the action.

*Fedler v. Casey*, 487 U.S. 131, 134 (1988).  In *Fedler* the
Wisconsin Supreme Court held the Wisconsin claims-notice
provision applied to the plaintiff's § 1983 action, and,
therefore, the court dismissed the plaintiff's claim for failure

to provide notice.  The United States Supreme Court reversed on
the ground that the notice requirement was "pre-empted as
inconsistent with federal law."  *Id*. at 136.  The Supreme Court
rejected the Wisconsin Supreme Court's conclusion that the notice
provision did not

> frustrate the remedial and deterrent purposes of
> the federal civil rights laws because the statute
> neither limits the amount a plaintiff may recover
> for violation of his or her civil rights, nor
> precludes the possibility of such recovery
> altogether.  Rather, the court reasoned, the
> notice requirement advances the State's legitimate
> interests in protecting against stale or
> fraudulent claims, facilitating prompt settlement
> of valid claims, and identifying and correcting
> inappropriate conduct by governmental employees
> and officials.

*Id*. at 137.  The Court explained:

> Although we have never passed on the question, the
> lower federal courts have all, with but one
> exception, concluded that notice-of-claim
> provisions are inapplicable to § 1983 actions
> brought in federal court. . . .  These courts have
> reasoned that, unlike the lack of statutes of
> limitations in the federal civil rights laws, the
> absence of any notice-of-claim provision is not a
> deficiency requiring the importation of such
> statutes into the federal civil rights scheme.
> Because statutes of limitation are among the
> universally familiar aspects of litigation
> considered indispensable to any scheme of justice,
> it is entirely reasonable to assume that Congress
> did not intend to create a right enforceable in
> perpetuity.  Notice-of-claim provisions, by
> contrast, are neither universally familiar nor in
> any sense indispensable prerequisites to
> litigation, and there is thus no reason to suppose
> that Congress intended federal courts to apply
> such rules, which significantly inhibit the
> ability to bring federal actions.

25 - OPINION AND ORDER

* * *

> [W]e fully agree with this near-unanimous
> conclusion of the federal courts. . . .  [T]his
> determination that notice-of-claim statutes are
> inapplicable to federal-court § 1983 litigation
> informs our analysis. . . .  [I]t demonstrates
> that the application of the notice requirement
> burdens the exercise of the federal right by
> forcing civil rights victims who seek redress in
> state courts to comply with a requirement that is
> entirely absent from civil rights litigation in
> federal courts.  This burden . . . is inconsistent
> in both design and effect with the compensatory
> aims of the federal civil rights laws.

*Id*. at 140-41 (citations omitted).

In addition, the Court noted as early as 1984 (one year after *Loiseau* was decided) that it had

> disapproved the adoption of state statutes of
> limitation that provide only a truncated period of
> time within which to file suit, because such
> statutes inadequately accommodate the complexities
> of federal civil rights litigation and are thus
> inconsistent with Congress' compensatory aims.

*Id*. at 139-40 (citations omitted).  It is, therefore, questionable whether *Loiseau* remains good law and unquestionable that the Oregon Supreme Court has concluded the OTCA notice provisions do not apply to claims under § 1983.

In *Urban Renewal Authority* the defendants brought a counterclaim against the Urban Renewal Authority for violation of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (RARPAPA), 42 U.S.C. § 4625.  The plaintiff demurred to the counterclaim on the ground that the defendants failed to provide OTCA notice of their claim.  275 Or. at 37.

26 - OPINION AND ORDER

The trial court granted the demurrer.  The Oregon Court of
Appeals held "no notice was required because the counterclaim was
not for a tort, but the breach of a duty arising from a statutory
obligation." *Id.*  The Oregon Supreme Court reversed and
concluded the counterclaim was a tort within the meaning of the
OTCA and that the defendants had given sufficient notice under
the OTCA.  *Id*. at 38-39.  The Oregon Supreme Court, however, did
not analyze whether application of the OTCA would frustrate any
remedial and deterrent purposes of the RARPAPA.  In addition,
there is not any indication that RARPAPA is a statute similar to
§ 1983, which Congress enacted to "entitle[] those deprived of
their civil rights to recover full compensation from the
governmental officials responsible for those deprivations."
*Fedler*, 487 U.S. at 153.  Thus, the Oregon Supreme Court's
conclusion related to the OTCA notice provision does not shed
light on the application of that provision in the context of a
statute such as Title VII, the purpose of which is much more
similar to the remedial and deterrent purposes of § 1983.

In *Butterfield* the Oregon Supreme Court held the plaintiffs
were required to provide notice under the OTCA before bringing
their claims for violation of the Fair Labor Standards Act on the
ground that the OTCA is a partial waiver of the state's sovereign
immunity and the plaintiffs had to comply with all requirements
of the OTCA in order "to take advantage of the state's partial

waiver" and bring their action in state court.  163 Or. App. at
231-32.  As in *Urban Renewal Authority*, however, the court did
not analyze whether application of the OTCA would frustrate any
remedial and deterrent purposes of the FLSA.  The court focused
its inquiry on whether violation of the FLSA was a tort and its
interaction with the state's sovereign immunity.

Finally, Defendant relies on *Coleman v. Court of Appeals of
Maryland*, 132 S. Ct. 1327 (2012), to support its assertion that
the OTCA notice provisions apply to Plaintiff's FMLA claim.  In
*Coleman* the Supreme Court held Congress failed to abrogate the
state's sovereign immunity for claims in which the plaintiff
alleged violation of FMLA's self-care provision,[2] and, therefore,
"suits against States under [that] provision are barred by"
sovereign immunity.  *Id.* at 1332.  Although it is not entirely
clear, Defendant appears to assert because there has not been any
waiver of sovereign immunity for Plaintiff's FMLA claim under
FMLA itself, the only waiver Plaintiff could rely on to bring her
FMLA claim is the partial waiver found under the OTCA, and,
therefore, Plaintiff was required to comply with all of the
provisions of the OTCA including the notice provision.

Neither party, however, analyzes whether Defendant is the
kind of entity that is entitled to sovereign immunity.  Defendant

---

[2] Plaintiff's claim for violation of FMLA appears to
be brought under FMLA's self-care provision, 29 U.S.C.
§ 2612(a)(1)(d).

appears to assume its designation as a "public body" under the
OTCA is sufficient to entitle it to sovereign immunity.  The
Oregon Court of Appeals, however, rejected that argument in
*Ackerman v. OHSU Medical Group*:

> The legislature has declared that entities such as
> Medical Group are "public bodies" for purposes of
> the OTCA.  ORS 353.117; ORS 30.260(4)(c).  They
> are therefore entitled to claim the protection of
> the "substitute and cap" provisions of that Act.
> However, whether applying those statutes so as to
> limit Medical Group's liability would deprive
> plaintiff of a constitutionally protected remedy
> depends, in the first instance, on whether Medical
> Group is an "instrumentality of the state," which
> is not the same thing as a "public body."  Whether
> Medical Group is an instrumentality of the state,
> and therefore entitled to sovereign immunity, is
> not a matter that can be determined by legislative
> declaration.  If it were, the legislature could
> circumvent the Remedy Clause by simply declaring
> that, for example, all individuals and
> corporations are "public bodies."

233 Or. App. 511, 521-22 (2010).  The Oregon Supreme Court has
identified three

> attributes generally possessed by instrument-
> alities of the state.  An instrumentality of the
> state performs a function traditionally performed
> by the state.  Additionally, the state generally
> outlines the powers and duties of its instrument-
> alities, either via statutory enactment or some
> other method.  An instrumentality of the state is
> subject, at least in part, to the control of the
> state in some way.

*Clarke v. Or. Health Sciences Univ.*, 343 Or. 581, 596 (2007).

Defendant does not point to any evidence in the record nor
provide any analysis as to whether it performs a function
traditionally performed by the state, whether the state has

29 - OPINION AND ORDER

outlined Defendant's "powers and duties," or the manner in which Defendant may be subject to state control.  On this record, therefore, the Court cannot conclude Defendant is an instrumentality of the state entitled to sovereign immunity, which would bar Plaintiff from bringing a FMLA claim against Defendant in this Court absent compliance with the OTCA.

In any event, Defendant does not cite, nor could this Court find, a case in which any court had concluded the OTCA notice provision applies to actions brought under Title VII or FMLA.

In the context of this case, the Court concludes the remedial and deterrent purposes of Title VII and FMLA are similar to those contemplated by Congress in enacting § 1983.  *See, e.g., Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 522-23 (1994)(noting Congress enacted Title VII and similar remedial statutes to prevent and to deter discriminatory acts by encouraging plaintiffs to act as "private attorneys general, vindicating Congressional policy of the highest priority and advancing the public interest."); *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)(A broad interpretation of Title VII's provisions is necessary to ensure that "unfettered access to statutory remedial mechanisms" is preserved.).  In addition, as with actions under § 1983, the Court concludes application of the OTCA notice requirement in Title VII and FMLA claims could "burden the exercise of th[ose] federal right[s] [in a way that] is

30 - OPINION AND ORDER

inconsistent in both design and effect with the compensatory aims of" Title VII and FMLA.

In the absence of any authority requiring individuals to comply with the notice provisions of the OTCA before bringing claims for violation of Title VII or FMLA in federal court against entities that have not been established to be instrumentalities of the state, the Court concludes Plaintiff under these circumstances was not required to provide notice under the OTCA with respect to her claims for violation of Title VII and FMLA.  Accordingly, the Court denies Defendant's Motion for Summary Judgment as to Plaintiff's claims for violation of Title VII and FMLA.

## CONCLUSION

For these reasons, the Court **GRANTS** Defendant's Motion (#106) for Summary Judgment as to Plaintiff's state-law claims and **DENIES** Defendant's Motion as to Plaintiff's federal claims. Accordingly, this matter will proceed only as to Plaintiff's claims for violation of FMLA, sex discrimination in violation of Title VII, and religious discrimination in violation of Title

VII.

      IT IS SO ORDERED.

      DATED this 14th day of January, 2014.

                                /s/ Anna J. Brown

                                _____
                                ANNA J. BROWN
                                United States District Judge